# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| BEAUX ARTS MUSEUM, LLC, a Florida Limited Liability Company, | |
| Plaintiff, | CIVIL ACTION No. |
| v. | |
| ALLAN BAITCHER, an individual, | |
| and | |
| PEACHTREE ANTIQUES, INC., a Georgia corporation, | |
| Defendants. | |

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL

**COMES NOW** Plaintiff BEAUX ARTS MUSEUM, LLC ("Plaintiff"), by and through the undersigned counsel, and hereby files this Complaint against Defendant ALLAN BAITCHER ("Baitcher") and Defendant Peachtree Antiques, Inc. ("Peachtree Antiques"), and respectfully alleges, states, and prays as follows:

1

## INTRODUCTION

1.      Plaintiff Beaux Arts Museum, LLC ("Plaintiff") brings this civil action to recover damages and equitable relief arising from a deliberate and extended course of fraudulent and deceptive conduct perpetrated by Defendant Allan Baitcher ("Baitcher") and the Georgia corporation he owns and controls, Defendant Peachtree Antiques, Inc. ("Peachtree Antiques"). Acting individually and through his corporate instrumentality, Defendant Baitcher engaged in a scheme to obtain Plaintiff's money and property by false pretenses, to convert those assets for his own use, and to conceal the proceeds through transfers among accounts and entities under his control.

2.      Baitcher's conduct is made worse by the means through which he was able to accomplish it. Baitcher exploited a multi-decade relationship with Alvin Malnik, the sole member of Plaintiff, to sell him millions of dollars of counterfeit art. Malnik relied on representations made to him about artwork acquired by Baitcher on his behalf because he had known Baitcher since he was a toddler and had followed his progression through the art world for decades. Ultimately, Baitcher betrayed Malnik's trust and used it against him by selling him thousands of pieces of counterfeit art, creating from whole-cloth fictitious appraisal firms to authenticate pieces of art, and sending emails from several fake email addresses purporting to authenticate the artwork he

acquired for Plaintiff. Baitcher's fraudulent scheme was only possible because of the trust reposed in him by Malnik, as well as the machinations he took to conceal the truth from Malnik and Plaintiff.

3.      Baitcher's misconduct encompasses a pattern of racketeering activity under both federal and Georgia RICO statutes, as well as multiple state law causes of action sounding in fraud, breach of fiduciary duty, theft by deception, conversion, unjust enrichment, fraudulent transfer, negligent misrepresentation, and related equitable claims for accounting, and restitution. Each of these claims arises from Defendants' coordinated misuse of Plaintiff's funds and Defendants' intentional and bad faith acts of deception, concealment, and misuse of corporate form.

4.      Plaintiff seeks compensatory, consequential, and punitive damages, restitution of all funds wrongfully obtained and retained by Defendants, avoidance of fraudulent transfers, the imposition of a constructive trust over traceable proceeds, and an accounting of all assets derived from the scheme. Plaintiff further seeks recovery of attorney's fees and litigation expenses incurred as a result of Defendant's fraud, bad faith, and stubborn litigiousness.

5.      Defendant Baitcher is the primary actor in the misconduct alleged herein, and Defendant Peachtree Antiques served as the

instrumentality and beneficiary of his actions. Together, they are jointly and severally liable for the injuries sustained by Plaintiff. Plaintiff asserts these claims to obtain both monetary and equitable relief commensurate with the harm caused and to deter similar misconduct in the future.

## PARTIES

6.     Plaintiff Beaux Arts Museum, LLC, is a limited liability company organized and existing under the laws of the State of Florida with its principal place of business in Ocean Ridge, Florida. Plaintiff has been injured in its business and property by the unlawful conduct described herein.

7.     Defendant Allan Baitcher is a citizen and resident of Atlanta, Georgia, within the Northern District of Georgia, and may be served at 6810 River Springs Lane NW, Atlanta, Georgia 30328.

8.     Defendant Peachtree Antiques is a Georgia corporation operating in and affecting interstate commerce. Peachtree Antiques served as the instrumentality and enterprise through which Baitcher conducted and concealed the unlawful acts described herein. Peachtree Antiques maintains its principal office at 2625 Piedmont Road #226, Atlanta, Georgia 30324, and may be served through its registered agent, Allan Baitcher, at that address.

9.     At all relevant times, Defendant Baitcher was the owner, officer, and controlling person of Defendant Peachtree Antiques.

4

## JURISDICTION AND VENUE

10.    This Court has subject matter jurisdiction over the federal RICO claim pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1964(c). The Court may exercise supplemental jurisdiction over related state law claims under 28 U.S.C. § 1367 because those claims arise from the same nucleus of operative facts.

11.    This court also has subject matter jurisdiction over the claims herein pursuant to 28 U.S.C. § 1332(a)(1) because the action is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. Plaintiff Beaux Arts Museum, LLC, is a Florida limited liability company. Plaintiff's sole member, Alvin Malnick, is an individual who is a resident of the state of Florida. Plaintiff is therefore a citizen of Florida for diversity purposes. Defendant Allan Baitcher is a natural person domiciled in and a citizen of the State of Georgia. Defendant Peachtree Antiques is a corporation organized under the laws of the State of Georgia, with its principal place of business in Atlanta, Georgia, and is therefore a citizen of Georgia for diversity purposes. Because Plaintiff is a citizen of Florida and Defendants are citizens of Georgia, complete diversity of citizenship exists, and the amount in controversy exceeds the jurisdictional

threshold; accordingly, this Court has jurisdiction over all claims in this action under § 1332.

12.     Venue is proper in the Northern District of Georgia under 28 U.S.C. § 1391(b)(1) because both Defendants reside in this District, and under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the claims occurred in this District. Defendant Baitcher resides in the Northern District of Georgia, and Defendant Peachtree Antiques maintains its principal place of business in this District, conducting the business activities through which the wrongful acts alleged herein were carried out. The deceptive communications, transfers of funds, and related acts that form the basis of this complaint were directed into or originated from this District. Moreover, Peachtree Antiques, the enterprise through which Defendant Baitcher conducted his racketeering activity, is headquartered and operated in this District. Accordingly, venue is proper in the U.S. District Court for the Northern District of Georgia, Atlanta Division, under § 1391(b).

13.     Venue is also proper under 18 U.S.C. § 1965(a) because Defendant Baitcher resides, is found, and transacts his affairs in this District within the meaning of that statute, including by soliciting business, receiving payments, and communicating with the victim from this District. Peachtree Antiques, the enterprise alleged in the RICO counts, was organized, managed,

and directed from within this District, and numerous predicate acts – including electronic communications, bank transfers, and the receipt and concealment of funds – occurred here. Accordingly, venue is proper in this District for the federal RICO count as well as for the pendent state law claims.

14.     Defendant Baitcher is subject to personal jurisdiction in this District because he is domiciled in and is a citizen of the State of Georgia and resides within the Northern District of Georgia, and is therefore subject to this Court's general jurisdiction.

15.     Defendant Peachtree Antiques is a Georgia corporation with its principal place of business in this District and has engaged in continuous and systematic business activities here; it is therefore subject to general jurisdiction under Fed. R. Civ. P. 4(k)(1)(A) and Georgia law.

## FACTUAL BACKGROUND

### *Baitcher occupied a position of trust with Malnik that allowed him to perpetrate the fraud.*

16.     Malnik's relationship with Baitcher dates back to the early 1960s. Baitcher's father, who worked for Malnik, introduced him to Malnik when he was approximately two years old.

17.     Baitcher and Mr. Malnik maintained a relationship as Baitcher advanced in his career, progressing from a stock boy to an auctioneer at Red Baron Antiques in Atlanta, Georgia.

18.    As an auctioneer, Baitcher invited Malnik to attend auctions to watch him sell fine art and antiques.

19.    Malnik and Baitcher shared a mutual interest in art, and Malnik recognized the expertise Baitcher had cultivated in fine art, antiques, high-end jewelry, and unique collectibles.

20.    Malnik considered Baitcher a friend upon whose expertise on arts, antiques, and jewelry he could rely – a fact Baitcher ultimately exploited to defraud Malnik, the sole member of the Plaintiff Beaux Arts Museum.

21.    Beginning as early as the 1990s, Malnik would travel to Atlanta to buy various paintings that had been recommended to him by Baitcher.

22.    Over time, Baitcher began acquiring art for Malnik.

23.    Baitcher represented to Malnik that he had a close connection with Wuhan Cheung, whom he referred to has Han, and who he claimed was the Director of the Hong Kong Museum of Art ("HKMOA") and the 'director' of the fictitious entity Kowloon Heritage Museum at the same address as the actual HKMOA.

24.    Baitcher represented to Malnik that because of his relationship with Han he had access to favorable acquisition opportunities.

25.    Baitcher represented to Malnik that he could acquire fine artwork at substantial discounts because the Hong Kong Museum of Art and Kowloon

Museums received donations of artwork from wealthy patrons seeking tax deduction benefits, and, thus the Museums had no cost outlay to recover and he could get more favorable pricing.

26.    Baitcher also represented to Malnik that other museums acquired artwork from wealthy patrons in a similar manner, and that the Hong Kong Museum of Art and those museums would trade art, thus expanding the scope of artwork which Baitcher had access to.

27.    Baitcher also represented to Malnik that certain artists would donate their artwork to the Hong Kong Museum of Art after exhibitions of the artists' collections, which, since no cost was involved, would allow him to acquire the art at a reduced price.

28.    As a result of the aforementioned representations, and the likely continuation of acquisitions in the future, Malnik formed Plaintiff Beaux Arts Museum to acquire selected artwork collections, including carved jade and ivory, paintings, sculptures, and artifacts.

29.    Based on his nearly sixty year relationship with Baitcher, Malnik trusted and relied on Baitcher's representations.

30.    Relying on the continuation of the above circumstances, the Plaintiff acquired, over the course of nearly ten years, several thousand pieces of artwork through Baitcher and his company Peachtree Antiques.

***The truth comes out.***

31.    After many years, Plaintiff began noticing irregularities in authentications and appraisals provided by Baitcher. Plaintiff attributed the irregularities to documentation prepared by third parties. Baitcher assured Plaintiff and Malnik he would resolve these 'minor' issues.

32.    For instance, when Plaintiff sought to authenticate three paintings by the artist Joan Miro purchased in 2019, Baitcher informed Plaintiff that the paintings should be returned to him to (1) send to Han, so Han could (2) send the paintings to the Fundacio Joan Miro (the "Foundation") for official authentication. According to Baitcher, if the Foundation determined the works to be inauthentic, they would be destroyed without any reimbursement or compensation. Eventually, the paintings were returned to Plaintiff with a signed letter allegedly from the Department de Conservacio at the Foundation indicating that each of the three paintings was authentic.

33.    In April 2024, Plaintiff emailed a follow up request to the Department de Conservacio, asking it to confirm that the signature on the signed authentication letter on the three Joan Miro pieces of art was genuine. The response Plaintiff received was startling: the signature was not authentic;

they did not write the letter; and it had never received or reviewed the three pieces of art.

34.    After this revelation, Plaintiff sought to confirm the provenance of other art acquired through Baitcher. Each and every institution that responded did so in the same way – each authentication provided by Baitcher was false.

35.    Plaintiff also discovered that Han was fabricated. Sparked by their growing suspicion of Baitcher, Plaintiff reached out to the Hong Kong Museum of Art and was put in touch with the actual director, who informed Plaintiff that Han (nor Wuhan Cheung) was not then or ever a director of the Hong Kong Museum of Art and that it had not authenticated any of the artwork Baitcher claimed to have purchased through it and no such person was ever affiliated with the Museum.

36.    In January 2024 and August 2024, Plaintiff confronted Baitcher with its preliminary findings, and after initially offering excuses for the findings, Baitcher ultimately admitted that he had acquired counterfeit and replica artwork for Plaintiff, had lied to Plaintiff about the provenance of the artwork, and had fabricated the people with whom he purportedly worked with in acquiring the artwork. The details of Baitcher's fraud are set forth in greater detail in the following paragraphs of this Complaint.

### *Civil RICO allegations*

37.    On or about September 16, 1996, the Secretary of the State of Georgia recognized the incorporation of Peachtree Antiques, a domestic for-profit corporation then having its principal place of business at 700 Miami Circle NE, Atlanta, Georgia, 30324.

38.    On or about March 22, 1997, Peachtree Antiques' annual registration listed Defendant Baitcher as the company's CEO and reaffirmed its principal office address as 700 Miami Circle NE, Atlanta, Georgia, 30324. This registration document bears Defendant Baitcher's handwritten signature as "owner/CEO."

39.    In and between 1997 and 2025, Defendant Baitcher was the owner and CEO of Peachtree Antiques, and at times also served as the company's CFO, Secretary, and Registered Agent. During that time, Defendant Baitcher managed, directed, dominated and controlled the affairs of Peachtree Antiques and used the company as an instrumentality to carry out the acts alleged herein.

40.    In or about 2015, Peachtree Antiques changed its principal office address to 2625 Piedmont Road #226, Atlanta, Georgia 30324. Peachtree Antiques retained this principal office address through at least October 2025.

41.    Beginning in at least 2014 and continuing through at least October 2025, Defendant Baitcher promoted himself publicly, including on the internet, as "a leading name in antique as well as personal property appraisal," someone with "a big wealth of experience and knowledge regarding evaluation and sale of antiques, treasure, and valuables," "a legal expert," and a person recognized by governmental agencies "as a supremely erudite antiques expert."[1] Defendant Baitcher even claimed to have appraised items for the White House[2] and boasted that he held "credentials that are accepted by insurance companies, the courts, the IRS, and many others."[3]

42.    From 2013 to 2024, Plaintiff was a Florida limited liability company that purchased, collected, curated, and displayed valuable works of art, such as original paintings and sculptures by Salvador Dali, Pablo Picasso, Banksy, and Ai WeiWei.

43.    Plaintiff's managing member is a lover and admirer of fine art, but he is not, as Defendant Baitcher supposedly was, "a professional

---

[1] https://medium.com/@allanbaitcher/allan-baitcher-a-big-name-in-assessment-and-auction-of-treasures-antiques-and-valuables-afd23ad9b983

[2] https://allanbaitcher.weebly.com

[3] https://atcaonline.com/collection-appraisals-whats-it-worth

appraiser. . . [who] has gained national and global recognition in the appraisal field," or "[t]he United States' most recognized appraisal expert."[4]

44.    In or around 1997, Baitcher originally contacted Malnick in Miami-Dade County, Florida, by interstate phone, representing that through his company, Peachtree Antiques, Baitcher could locate and purchase valuable pieces of original artwork for him.

45.    In or around 2013 and continuing routinely through 2024, Plaintiff worked with Baitcher through Baitcher's company, Peachtree Antiques, to consider or locate various pieces of original artwork for potential purchase by Plaintiff. Baitcher would present Malnik with works of art or batches of art based on his knowledge of what artists Malnik preferred.

46.    Based upon Baitcher's assertions to Plaintiff about his professional qualifications and certifications, his purported ability to find rare pieces of original artwork for sale, and Baitcher's lifelong relationship with Plaintiff's managing member, Plaintiff believed and expected that Baitcher would engage in honest and fair dealing with Plaintiff at all times.

47.    Unfortunately, rather than providing honest services to Plaintiff, Baitcher engaged in a multi-year scheme to defraud Plaintiff of money and

---

[4] https://eprconsumernews.com/2014/04/28/leading-personal-property-evaluation-expert-allan-baitcher-provides-aon-insurance-wealth-managers-the-tools-for-success/

property, the object of which scheme was to enrich Baitcher, Peachtree Antiques, and Baitcher's other businesses.

48.    The manner and means of Baitcher's scheme to defraud Plaintiff, which scheme Baitcher executed repeatedly throughout 2014-2024, included, but were not limited to, the following:

    a.  Baitcher would send Plaintiff, via email to its managing member, photographs taken from internet sites ascribed to companies such as You Fine Art Sculpture Limited ("You Fine"), a Chinese company that creates and sells replicas of famous works of art;

    b.  Baitcher would inform Plaintiff, via email to its managing member, that the photographs depicted, often as part of the collection of HKMOA, one or more original, unique works of art whose provenance was authenticated, which representation Baitcher then knew was false and fraudulent;

    c.  Baitcher would quote Plaintiff, via email to its managing member, an inflated price for the artwork depicted in the photographs, which artwork Baitcher falsely represented as original and authentic when he knew it was inauthentic, counterfeit, or forged;

d.  Baitcher would insert fabricated messages, purportedly from art dealers and museum personnel, into emails he sent to Plaintiff via its managing member to present an appearance of legitimacy, although Baitcher then knew the representations in the fabricated conversations were false and fraudulent;

e.  Baitcher, through Peachtree Antiques, would follow up with telephone calls to Plaintiff's managing member to solicit negotiations for the purchase of the artwork and accept funds from Plaintiff to purchase original and authentic works of art Plaintiff believed Baitcher could and would obtain;

f.  Baitcher would instead purchase, through Peachtree Antiques, the less expensive replicas from You Fine or from similar or other sellers of inauthentic, counterfeit, and/or forged artwork and paintings;

g.  Baitcher would, through Peachtree Antiques, accept payment from Plaintiff and knowingly and wrongfully retain the difference between the price quoted for the original, authentic pieces of art – which Baitcher then knew he had not purchased and did not intend to purchase – and the inauthentic, counterfeit, or forged reproductions;

h.  Baitcher would use the U.S. Postal Service or U.S. private or commercial mail carriers to receive, via Peachtree Antiques, and deliver to Plaintiff, via Peachtree Antiques, inauthentic, counterfeit, or forged replicas of the bargained-for artwork;

i.  Baitcher would deliver to Plaintiff, via email to its managing member, documents purporting to certify the authenticity of the artwork, which documents Baitcher then knew to be forged, false, and fraudulent;

j.  Baitcher would deliver to Plaintiff, via email to its managing member, one or more videos of an unidentified "expert" stating that certain artwork, which Baitcher then knew to be a counterfeit replica, was authentic;

k.  Baitcher would falsely recount to Plaintiff, via email to its managing member, Baitcher's conversations with purported experts, which experts Baitcher then knew to be fictitious person(s) of Baitcher's own creation, stating that certain artwork Plaintiff purchased was authentic and promising Plaintiff written reports of authenticity by said experts that were either false and fraudulent or were never provided;

l.  Baitcher would establish and control internet domains purporting to belong to fictitious experts of Baitcher's own creation for the purpose of legitimizing false and fraudulent authentications provided by Baitcher;

m.  Baitcher would also create new email addresses, falsely pose as persons qualified to authenticate works of art, and send Plaintiff, via those email addresses, false and fraudulent authentications of the inauthentic artwork. For instance, Baitcher created the new domain HKMOA.org and then sent emails to himself at appraiserallan@aol.com from the fictitious 'Wuhan Cheung' to falsely validate artwork acquired by the Plaintiff; and,

n.  Over a multi-year period, through December 2023, Baitcher, through Peachtree Antiques, would knowingly and purposefully retain the purchase price he obtained from Plaintiff for over 800 items of authentic, original artwork with the intent to deliver nothing at all, or falsely blaming computer issues, framing problems or shipping, and customs delays for Baitcher's failure to deliver the purchased artwork.

49.    Between 2016 and 2024, Baitcher's company, Peachtree Antiques, received more than 30 shipping containers with a collective gross

weight of over 360,000 pounds from You Fine in China. During much of that period, Peachtree Antiques was the largest U.S. importer of sculpture artwork from You Fine.

50.    On or about February 2, 2023, Baitcher, using www.wix.com, registered the internet domain "RobertSachsFineArt.com" and created a website at that URL to create bona fides for "Robert Sachs," a persona Baitcher created to falsely and fraudulently provide bogus authentication of artwork to Plaintiff. Baitcher also established a phone number for "Robert Sachs" and maintained an answering service for the phone line.

51.    On or about March 3, 2023, Baitcher, using www.wix.com, registered the internet domain "RosenFineArtBuyers.art" and created a website at that URL to create bona fides for "Steve Rosen," a persona Baitcher created to falsely and fraudulently provide bogus authentication of artwork to Plaintiff. Baitcher also established a phone number for "Steve Rosen" and maintained an answering service for the phone line.

52.    On or about March 15, 2023, Baitcher, using www.wix.com, registered the internet domain "DurhamArtBrokers.com" and created a website at that URL to create bona fides for "Peter Durham," a persona Baitcher created to falsely and fraudulently provide bogus authentication of

artwork to Plaintiff. Baitcher also established a phone number for "Peter Durham" and maintained an answering service for the phone line.

53.     In emails to Plaintiff via its managing member, Baitcher vouched for the credentials and reputation of Sachs, Rosen, and Durham, with whom Baitcher falsely claimed to have spoken on Plaintiff's behalf about specific pieces of art, and falsely informed Plaintiff each purported expert had authenticated pieces of art Baitcher then knew were inauthentic and counterfeit replicas.

54.     On March 16, 2023, Baitcher emailed Plaintiff, via its managing member, falsely representing that Peter Durham would examine sculptures by the artist Koons. This email was sent one day after the domain "DurhamArtBrokers.com" was created by Baitcher. Plaintiff relied on these false representations made by Baitcher.

55.     On or about March 20, 2023, Baitcher emailed Plaintiff, via its managing member, falsely representing that Robert Sachs had "spent many hours doing a physical and chemical analysis of one of our Jackson Pollack [sic] works of art" on February 13, 2023 (less than two weeks after the domain "RobertSachsFineArt.com" was created). Baitcher provided Plaintiff with a falsified written authentication report from Robert Sachs, which concluded that "based on chemical analysis and paint composition[,] this work of art is

unquestionably by the artist Jackson Pollock." In reliance on these false representations, Plaintiff proceeded to consummate other art purchases from Baitcher, continuing to believe his representations regarding the artwork's authenticity.

56.    On March 20, 2023, Baitcher emailed Plaintiff, via its managing member, falsely representing that Steven Rosen, whom Baitcher purported was a "recognized expert on the artwork of Jean Michelle Basquiat," examined and authenticated a Basquiat painting on March 16, 2023 (less than two weeks after the domain "RosenFineArtBuyers.art" was first created and shortly the website was fabricated to create this fake 'expert'). According to the email from Baitcher, Steven Rosen concluded that "the Basquiat painting I examined while at your location is indeed an original work of art by the artist Jean Michael Basquiat. There is no question whatsoever." Plaintiff relied on these false representations, not knowing that Baitcher had only weeks before created the website and that Steven Rosen was not a real person but a fictitious character created as part of Baitcher's fraud scheme.

57.    Based on public reports of numerous fake Banksy artwork items being circulated and discovering that the artist had setup his own authentication enterprise, the Plaintiff on n September 2, 2023, contacted representatives from a company called Pest Control (a not-for-profit company

created by the artist Banksy to officially authenticate his works) inquiring about the authenticity of thirty purportedly original paintings by Banksy that Plaintiff purchased through Baitcher. These paintings were previously authenticated by the fictitious "director@HKMOA.org" or other documents were provided by Baitcher, allegedly representing their authenticity. On September 5, Pest Control responded stating that all the works of art appeared to be "unauthorized reproductions rather than legitimate artworks by the artist known as Banksy."

58.    On or about September 16, 2023, following a question from Plaintiff about the authenticity of purported Banksy artworks, Baitcher registered the online domain "HKMOA.org" for the purpose of legitimizing Baitcher's false and fraudulent representations to Plaintiff purportedly from the Hong Kong Museum of Art ("HKMOA").

59.    Later in September 2023, Baitcher used the email address "director@HKMOA.org" to create a message purportedly from Wuhan Cheung at the HKMOA, assuring Baitcher that certain pieces of art were authentic and came directly from the HKMOA. Defendant Baitcher then copied and pasted the purported exchange, which Defendant Baitcher then knew was false, fraudulent, and fictitious, into an email he sent to Plaintiff. Between 2013 and 2023, Defendant Baitcher provided Plaintiff at least 235

false authentications signed by Wuhan Cheung, a false persona created by Defendant Baitcher.

60.    On July 7, 2024, Plaintiff emailed the HKMOA museum director (Maria Mok) listed on their museum website, at the address "mkwmok@lcsd.gov.hk" (not the fictitious domain "HKMOA.org" created by Baitcher), inquiring about letters of authenticity signed by Wuhan Cheung. HKMOA's museum director stated in her reply that "we are not acquainted with anyone named Wuhan Cheung, and we do not issue letters like these."

61.    Defendant Baitcher delivered by mail or email the following certifications or verifications of authenticity to Plaintiff, among others, knowing when he provided them that they were false and fraudulent, and that the corresponding pieces of art Defendant Baitcher procured for Plaintiff were inauthentic, counterfeit or replicas worth a small fraction of the price quoted by Defendant Baitcher and of little or no value compared to the amount ultimately paid by Plaintiff for original, authentic works of art represented by Baitcher:

| DATE | BUSINESS OR EDUCATIONAL ENTITY | NAME OF "EXPERT" | ARTIST/ARTWORK |
|------|-------------------------------|------------------|----------------|
| 06/29/2013 | HKMOA | Wuhan Cheung | Banksy/Grannies |
| 06/29/2013 | HKMOA | Wuhan Cheung | Banksy/Queen Vic |

| 06/29/2013 | HKMOA | Wuhan Cheung | Banksy/Heavy Weaponry |
| 06/29/2013 | HKMOA | Wuhan Cheung | Banksy/Kate Moss |
| 06/29/2013 | HKMOA | Wuhan Cheung | Banksy/Love is in the Air |
| 06/29/2013 | HKMOA | Wuhan Cheung | Banksy/Heavy Weaponry (2) |
| 06/29/2013 | HKMOA | Wuhan Cheung | Banksy/Rat with Knife |
| 06/29/2013 | HKMOA | Wuhan Cheung | Banksy/Toxic Mary |
| 06/29/2013 | HKMOA | Wuhan Cheung | Banksy/Rose in Mouse Trap |
| 06/29/2013 | HKMOA | Wuhan Cheung | Banksy/Choose your Weapon |
| 06/29/2013 | HKMOA | Wuhan Cheung | Banksy/Nola |
| 06/29/2013 | HKMOA | Wuhan Cheung | Banksy/Smiling Copper |
| 06/29/2013 | HKMOA | Wuhan Cheung | Banksy/Insane Clown |
| 06/29/2013 | HKMOA | Wuhan Cheung | Banksy/Think Tank |
| 05/10/2022 | Brancusi Research and Documentation Centre | Pavel Suvara; Doru Stranbulescu | Brancusi, Constantin/Le Coq |
| 05/10/2022 | Brancusi Research and Documentation Centre | Pavel Suvara; Doru Stranbulescu | Brancusi, Constantin/Jeune Fille Sophistiqee |
| 05/10/2022 | Brancusi Research and Documentation Centre | Pavel Suvara; Doru Stranbulescu | Brancusi, Constantin/Maiastra |
| 05/10/2022 | Brancusi Research and Documentation Centre | Pavel Suvara; Doru Stranbulescu | Brancusi, Constantin/A Muse |
| 05/10/2022 | Brancusi Research and Documentation Centre | Pavel Suvara; Doru Stranbulescu | Brancusi, Constantin/Princess X |

| 10/28/2021 | University of Vienna (Universitat Wien) | Professor Teja Bach | Brancusi, Constantin |
|---|---|---|---|
| No date | Cass Sculpture Foundation | Claire Shea | Chadwick, Lynn/Couple on a Seat |
| No date | Cass Sculpture Foundation | Claire Shea | Chadwick, Lynn/472 Monopod |
| No date | Cass Sculpture Foundation | Claire Shea | Chadwick, Lynn/Beast IX |
| No date | Cass Sculpture Foundation | Claire Shea | Chadwick, Lynn/Teddy Boy and Girl II |
| No date | Cass Sculpture Foundation | Claire Shea | Chadwick, Lynn/Winged Figures |
| No date | Cass Sculpture Foundation | Claire Shea | Chadwick, Lynn/Stranger III |
| No date | Cass Sculpture Foundation | Claire Shea | Chadwick, Lynn/High Wind III |
| 11/19/2019 | Christie's | Nadja Scribante | Currin, John/Buffet |
| 05/29/2002 | | Robert P. Descharnes | Dali, Salvador/Spellbound |
| 04/04/2020 | I.A.R. Art Resources ltd | N. Descharnes; Benjamino Levi | Dali, Salvador/The Face of War |
| 08/23/2017 | I.A.R. Art Resources ltd | N. Descharnes; Benjamino Levi | Dali, Salvador/Elephant |
| 01/15/2016 | I.A.R. Art Resources ltd | R. Descharnes; Benjamino Levi | Dali, Salvador/Dance of Time |
| 02/04/2015 | I.A.R. Art Resources ltd Cyprus | Benjamino Levi | Dali, Salvador/Alice in Wonderland |
| 08/15/2020 | I.A.R. Art Resources ltd | N. Descharnes; | Dali, Salvador/Woman at the Table |

|  |  | Benjamino Levi |  |
|---|---|---|---|
| No Date | The Goldsmiths Company | Roger Camber | Dali, Salvador/Joan of Arc and 3 other sculptures |
| 10/20/2018 | n/a | Robert Hugh | Dali, Salvador/Surrealist Piano |
| No date | Fondation-Giacometti; Giacometti Committee | Michele Kieffer | Giacometti, Alberto/Cubist Composition |
| No date | Fondation-Giacometti; Giacometti Committee | Michele Kieffer | Giacometti, Alberto/Walking Woman (Femme Qui Marche) |
| No date | Fondation-Giacometti; Giacometti Committee | Michele Kieffer | Giacometti, Alberto/Three Men Walking |
| No date | Fondation-Giacometti; Giacometti Committee | Michele Kieffer | Giacometti, Alberto/Walking Man 1 |
| No date | Fondation-Giacometti; Giacometti Committee | Michele Kieffer | Giacometti, Alberto/Nu Debout Sur Socle Cubique |
| No date | Fondation-Giacometti; Giacometti Committee | Michele Kieffer | Giacometti, Alberto/Cubist Figure 1 |
| No date | Fondation-Giacometti; Giacometti Committee | Michele Kieffer | Giacometti, Alberto/Diego Assis |
|  | Fondation-Giacometti; | Michele Kieffer | Giacometti, Alberto/Nu Debout Sur Socle |

26

| | Giacometti Committee | | |
|---|---|---|---|
| No date | Fondation-Giacometti; Giacometti Committee | Michele Kieffer | Giacometti, Alberto/Petit Monstre 1/6 |
| No date | Fondation-Giacometti; Giacometti Committee | Michele Kieffer | Giacometti, Alberto/Petit Monstre 5/6 |
| No date | Fondation-Giacometti; Giacometti Committee | Michele Kieffer | Giacometti, Alberto/Nude Woman and Rider |
| No date | Fondation-Giacometti; Giacometti Committee | Michele Kieffer | Giacometti, Alberto/Diego with Sweater |
| No date | Fondation-Giacometti; Giacometti Committee | Michele Kieffer | Giacometti, Alberto/The Couple |
| No date | Fondation-Giacometti; Giacometti Committee | Michele Kieffer | Giacometti, Alberto/The Cage |
| No date | Fondation-Giacometti; Giacometti Committee | Michele Kieffer | Giacometti, Alberto/Le Nez |
| No date | Fondation-Giacometti; Giacometti Committee | Michele Kieffer | Giacometti, Alberto/Chariot |
| No date | Christie's | Liang-Lin Chen | Guanzhong, Wu |
| No date | Christie's | Liang-Lin Chen | Sanyu |

| 07/08/2021 | Kowloon Heritage Museum | Director of Kowloon Heritage Museum | Guanzhong, Wu/Untitled (sticks and branches) |
|---|---|---|---|
| 07/08/2021 | Kowloon Heritage Museum | Director of Kowloon Heritage Museum | Guanzhong, Wu/The Side of the Funchun River |
| 07/08/2021 | Kowloon Heritage Museum | Director of Kowloon Heritage Museum | Guanzhong, Wu/Flower |
| 07/08/2021 | Kowloon Heritage Museum | Director of Kowloon Heritage Museum | Guanzhong, Wu/Morning Bell |
| 07/08/2021 | Kowloon Heritage Museum | Director of Kowloon Heritage Museum | Guanzhong, Wu/Untitled (tree branches) |
| 07/08/2021 | Kowloon Heritage Museum | Director of Kowloon Heritage Museum | Guanzhong, Wu/Untitled (fruit branches) |
| 07/08/2021 | Kowloon Heritage Museum | Director of Kowloon Heritage Museum | Guanzhong, Wu/Untitled (birds) |
| 07/08/2021 | Kowloon Heritage Museum | Director of Kowloon Heritage Museum | Guanzhong, Wu/Untitled (trees) |
| 07/08/2021 | Kowloon Heritage Museum | Director of Kowloon Heritage Museum | Guanzhong, Wu/Home of man |
| 07/08/2021 | Kowloon Heritage Museum | Director of Kowloon | Guanzhong, Wu/Untitled (Elephants) |

| | | Heritage Museum | |
|---|---|---|---|
| 07/08/2021 | Kowloon Heritage Museum | Director of Kowloon Heritage Museum | Guanzhong, Wu/Village Street Scene |
| 07/08/2021 | Kowloon Heritage Museum | Director of Kowloon Heritage Museum | Guanzhong, Wu/Memories of Xihu |
| 07/08/2021 | Kowloon Heritage Museum | Director of Kowloon Heritage Museum | Guanzhong, Wu/The Yangtze River in 1974 |
| 07/08/2021 | Kowloon Heritage Museum | Director of Kowloon Heritage Museum | Guanzhong, Wu/Azalea |
| 07/08/2021 | Kowloon Heritage Museum | Director of Kowloon Heritage Museum | Guanzhong, Wu/Lotus Pond |
| 07/08/2021 | Kowloon Heritage Museum | Director of Kowloon Heritage Museum | Guanzhong, Wu/Lu Mountains |
| 07/08/2021 | Kowloon Heritage Museum | Director of Kowloon Heritage Museum | Guanzhong, Wu/All Homeland Sounds |
| 07/08/2021 | Kowloon Heritage Museum | Director of Kowloon Heritage Museum | Guanzhong, Wu/New Bamboos Alongside the Li River |
| 07/08/2021 | Kowloon Heritage Museum | Director of Kowloon Heritage Museum | Guanzhong, Wu/A Tree in the Li Village |

| 07/08/2021 | Kowloon Heritage Museum | Director of Kowloon Heritage Museum | Guanzhong, Wu/Plum Blossoms |
|---|---|---|---|
| 07/08/2021 | Kowloon Heritage Museum | Director of Kowloon Heritage Museum | Guanzhong, Wu/By the Wu River |
| 07/08/2021 | Kowloon Heritage Museum | Director of Kowloon Heritage Museum | Guanzhong, Wu/A Mountain Village in the North |
| 07/08/2021 | Kowloon Heritage Museum | Director of Kowloon Heritage Museum | Guanzhong, Wu/Autumn on the Wall |
| 07/08/2021 | Kowloon Heritage Museum | Director of Kowloon Heritage Museum | Guanzhong, Wu/The Great Wall |
| 07/08/2021 | Kowloon Heritage Museum | Director of Kowloon Heritage Museum | Guanzhong, Wu/By the Side of the Li River |
| 07/08/2021 | Kowloon Heritage Museum | Director of Kowloon Heritage Museum | Guanzhong, Wu/Mountains After the Rain |
| 07/08/2021 | Kowloon Heritage Museum | Director of Kowloon Heritage Museum | Guanzhong, Wu/Lintang |
| 07/08/2021 | Kowloon Heritage Museum | Director of Kowloon Heritage Museum | Guanzhong, Wu/Village |
| 07/08/2021 | Kowloon Heritage Museum | Director of Kowloon | Guanzhong, Wu/By the Wu River |

| | | Heritage Museum | |
|---|---|---|---|
| 07/08/2021 | Kowloon Heritage Museum | Director of Kowloon Heritage Museum | Guanzhong, Wu/Parrots |
| 07/08/2021 | Kowloon Heritage Museum | Director of Kowloon Heritage Museum | Guanzhong, Wu/The Great Wall (1) |
| 07/08/2021 | Kowloon Heritage Museum | Director of Kowloon Heritage Museum | Guanzhong, Wu/Spring Willows |
| 07/08/2021 | Kowloon Heritage Museum | Director of Kowloon Heritage Museum | Guanzhong, Wu/Morning Rain |
| 07/08/2021 | Kowloon Heritage Museum | Director of Kowloon Heritage Museum | Guanzhong, Wu/Untitled (Landscape) |
| 07/08/2021 | Kowloon Heritage Museum | Director of Kowloon Heritage Museum | Guanzhong, Wu/Mountains |
| 07/08/2021 | Kowloon Heritage Museum | Director of Kowloon Heritage Museum | Guanzhong, Wu/Lotus Pond |
| 07/08/2021 | Kowloon Heritage Museum | Director of Kowloon Heritage Museum | Guanzhong, Wu/Untitled (dark landscape) |
| 07/08/2021 | Kowloon Heritage Museum | Director of Kowloon Heritage Museum | Guanzhong, Wu/Untitled (1) |

| 07/08/2021 | Kowloon Heritage Museum | Director of Kowloon Heritage Museum | Guanzhong, Wu/Untitled (three women) |
|---|---|---|---|
| 07/08/2021 | Kowloon Heritage Museum | Director of Kowloon Heritage Museum | Guanzhong, Wu/Untitled (2) |
| 07/08/2021 | Kowloon Heritage Museum | Director of Kowloon Heritage Museum | Guanzhong, Wu/Untitled (3) |
| 07/08/2021 | Kowloon Heritage Museum | Director of Kowloon Heritage Museum | Guanzhong, Wu/Untitled (houses on water) |
| 07/08/2021 | Kowloon Heritage Museum | Director of Kowloon Heritage Museum | Guanzhong, Wu/Untitled (4) |
| 07/08/2021 | Kowloon Heritage Museum | Director of Kowloon Heritage Museum | Guanzhong, Wu/Untitled (5) |
| 07/08/2021 | Kowloon Heritage Museum | Director of Kowloon Heritage Museum | Guanzhong, Wu/Untitled (6) |
| 07/08/2021 | Kowloon Heritage Museum | Director of Kowloon Heritage Museum | Guanzhong, Wu/Untitled (7) |
| 07/08/2021 | Kowloon Heritage Museum | Director of Kowloon Heritage Museum | Guanzhong, Wu/Untitled (narrow street) |
| 07/08/2021 | Kowloon Heritage Museum | Director of Kowloon | Guanzhong, Wu/Untitled (8) |

| | | Heritage Museum | |
|---|---|---|---|
| 07/08/2021 | Kowloon Heritage Museum | Director of Kowloon Heritage Museum | Guanzhong, Wu/Untitled (9) |
| 07/08/2021 | Kowloon Heritage Museum | Director of Kowloon Heritage Museum | Guanzhong, Wu/Untitled (outdoor seating) |
| 07/08/2021 | Kowloon Heritage Museum | Director of Kowloon Heritage Museum | Guanzhong, Wu/Untitled (village through trees) |
| 07/08/2021 | Kowloon Heritage Museum | Director of Kowloon Heritage Museum | Guanzhong, Wu/Untitled (10) |
| 07/08/2021 | Kowloon Heritage Museum | Director of Kowloon Heritage Museum | Guanzhong, Wu/Untitled (11) |
| 07/08/2021 | Kowloon Heritage Museum | Director of Kowloon Heritage Museum | Guanzhong, Wu/Untitled (12) |
| 07/08/2021 | Kowloon Heritage Museum | Director of Kowloon Heritage Museum | Guanzhong, Wu/Untitled (colorful landscape) |
| 07/08/2021 | Kowloon Heritage Museum | Director of Kowloon Heritage Museum | Guanzhong, Wu/Jujube Grove |
| 07/08/2021 | Kowloon Heritage Museum | Director of Kowloon Heritage Museum | Guanzhong, Wu/Shakespeare Hometown |

| | | | |
|---|---|---|---|
| 07/08/2021 | Kowloon Heritage Museum | Director of Kowloon Heritage Museum | Guanzhong, Wu/Pine Trees on Mountain |
| 07/08/2021 | Kowloon Heritage Museum | Director of Kowloon Heritage Museum | Guanzhong, Wu/Hong Kong at Night |
| 07/08/2021 | Kowloon Heritage Museum | Director of Kowloon Heritage Museum | Guanzhong, Wu/Spring Willows |
| 07/08/2021 | Kowloon Heritage Museum | Director of Kowloon Heritage Museum | Guanzhong, Wu/Landscape |
| 10/12/2020 | Appraiser in Barnwell, Peterborough UK | Robert Hugh | Magritte, Rene/The Healer |
| 10/12/2020 | Appraiser in Barnwell, Peterborough UK | Robert Hugh | Magritte, Rene/La Race Blanche |
| 11/29/2019 | Fundació Joan Miró | Ester Ramos Pia | Miró, Joan/Le Jour |
| 11/29/2019 | Fundació Joan Miró | Ester Ramos Pia | Miró, Joan/The Fish Below (Writings on Red Background) |
| 11/29/2019 | Fundació Joan Miró | Ester Ramos Pia | Miró, Joan/Essences (La Meneuse de Lune) |
| No date | Henry Moore Foundation | Godfrey Worsdale | Moore, Henry/Mother and Child |
| No date | Henry Moore Foundation | Godfrey Worsdale | Moore, Henry/Unspecified |
| No date | Henry Moore Foundation | Godfrey Worsdale | Moore, Henry/Unspecified |
| 02/13/2023 | Robert Sachs Fine Art | Robert Sachs | Pollock, Jackson/16B |
| 12/02/2020 | n/a | Zhang Xiaoganag | Xiaogang, Zhang/Untitled, 2006 |

| 12/02/2020 | n/a | Zhang Xiaoganag | Xiaogang, Zhang/Blindfold Dancer |
| 12/02/2020 | n/a | Zhang Xiaoganag | Xiaogang, Zhang/Blood Line Series – Girl, 2006 |
| 12/02/2020 | n/a | Zhang Xiaoganag | Xiaogang, Zhang/Little Navy, 2006 |
| 02/07/2021 | Sichuan Fine Arts Institute | Luo Zhongli | Zhongli, Luo/Untitled (1) |
| 02/07/2021 | Sichuan Fine Arts Institute | Luo Zhongli | Zhongli, Luo/Untitled (2) |
| 02/07/2021 | Sichuan Fine Arts Institute | Luo Zhongli | Zhongli, Luo/Untitled (3) |
| 02/07/2021 | Sichuan Fine Arts Institute | Luo Zhongli | Zhongli, Luo/Embrace |
| 02/07/2021 | Sichuan Fine Arts Institute | Luo Zhongli | Zhongli, Luo/Thunderstorm - 2005 |
| 02/07/2021 | Sichuan Fine Arts Institute | Luo Zhongli | Zhongli, Luo/Shadow - 2005 |
| 02/07/2021 | Sichuan Fine Arts Institute | Luo Zhongli | Zhongli, Luo/On the Way Home |
| 02/07/2021 | Sichuan Fine Arts Institute | Luo Zhongli | Zhongli, Luo/Peasant with Lantern - 2004 |
| 02/07/2021 | Sichuan Fine Arts Institute | Luo Zhongli | Zhongli, Luo/Cross the River |
| 02/07/2021 | Sichuan Fine Arts Institute | Luo Zhongli | Zhongli, Luo/Embrace |
| 02/07/2021 | Sichuan Fine Arts Institute | Luo Zhongli | Zhongli, Luo/Bathing Girl |
| 02/07/2021 | Sichuan Fine Arts Institute | Luo Zhongli | Zhongli, Luo/Girl Bathing at Sunset |
| 02/07/2021 | Sichuan Fine Arts Institute | Luo Zhongli | Zhongli, Luo/Sharpen a Sword |
| 02/07/2021 | Sichuan Fine Arts Institute | Luo Zhongli | Zhongli, Luo/A Late Return (A Lift at Night) |

| 10/15/2020 | Sichuan Fine Arts Institute | Luo Zhongli | Zhongli, Luo/Yi People in Lianshan Mountain |
|---|---|---|---|
| 10/15/2020 | Sichuan Fine Arts Institute | Luo Zhongli | Zhongli, Luo/ |
| 10/15/2020 | Sichuan Fine Arts Institute | Luo Zhongli | Zhongli, Luo/ |
| 10/15/2020 | Sichuan Fine Arts Institute | Luo Zhongli | Zhongli, Luo/Tibetan Lad |
| 10/15/2020 | Sichuan Fine Arts Institute | Luo Zhongli | Zhongli, Luo/ |
| 10/15/2020 | Sichuan Fine Arts Institute | Luo Zhongli | Zhongli, Luo/ |
| 10/15/2020 | Sichuan Fine Arts Institute | Luo Zhongli | Zhongli, Luo/Woman Body |
| 10/15/2020 | Sichuan Fine Arts Institute | Luo Zhongli | Zhongli, Luo/Girl Among Roof |
| 10/15/2020 | Sichuan Fine Arts Institute | Luo Zhongli | Zhongli, Luo/ |
| 10/15/2020 | Sichuan Fine Arts Institute | Luo Zhongli | Zhongli, Luo/Father |
| 10/15/2020 | Sichuan Fine Arts Institute | Luo Zhongli | Zhongli, Luo/Reconciliation |
| 10/15/2020 | Sichuan Fine Arts Institute | Luo Zhongli | Zhongli, Luo/Big Haystack |

62.    Further, several authentic pieces of art that Plaintiff believed it had purchased through Defendant Baitcher appeared, while Plaintiff possessed what it believed to be the genuine items, at various public auctions and in exhibits at museums around the world, establishing that numerous works Defendant Baitcher had sold to Plaintiff as originals were, in fact, counterfeit.

63.    Plaintiff also recently discovered that certain works of art portrayed by Defendant Baitcher as created by artist Yue Minjun, which Plaintiff purchased through Defendant Baitcher, contain substantial differences from public images of the authentic artwork. For example, the artist's signatures on the items delivered to Plaintiff by Defendant Baitcher are in incorrect locations or are different in appearance from those in the images provided by Defendant Baitcher prior to purchase, evincing the counterfeit nature of the artwork.

## COUNT ONE – VIOLATION OF 18 U.S.C. § 1962(c)
### (Conduct of an Enterprise Through a Pattern of Racketeering Activity)
### (AGAINST DEFENDANT ALLAN BAITCHER)

64.    Plaintiff realleges and incorporates by reference the allegations set forth in

Paragraphs 1–65 of this Complaint as if fully restated herein.

65.    Plaintiff asserts this claim against Defendant Allan Baitcher.

66.    This Count alleges claims against the Defendant Baitcher under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961-1968, also known as "RICO" (or "Federal RICO"), asserting a statutory right of action against Defendant Baitcher for his conduct of, or participation, directly or indirectly, in an enterprise through a pattern of criminal activity in

violation of 18 U.S.C. § 1962(c). Defendant Baitcher's actions have proximately caused injury to Plaintiff's business and property.

67.    Section 1962(c) states that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."

68.    At all times relevant hereto, Defendant Baitcher was the sole owner, officer and director of Peachtree Antiques, a corporation organized under the laws of Georgia and engaged in interstate and foreign commerce by acquiring and distributing goods and services in interstate and foreign commerce.

69.    Peachtree Antiques constituted an "enterprise" within the meaning of 18 U.S.C. § 1961(4). Peachtree Antiques had a separate legal existence, maintained corporate records and bank accounts, and conducted business that affected interstate and foreign commerce.

70.    Defendant Baitcher, as a "person" within the meaning of 18 U.S.C. § 1961(3), conducted and participated, directly and indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c). The conduct was continuous,

related, and intended to financially enrich Defendant at Plaintiff's expense. Defendant's racketeering activity, set forth in greater detail below, affected the enterprise involved in interstate foreign commerce.

71.    Although Defendant was the sole owner, officer and director of Peachtree Antiques, he used the corporation as an instrumentality and conduit to perpetrate the racketeering scheme described below. The enterprise and the person are distinct within the meaning of § 1962(c) because Defendant Baitcher is a natural person capable of holding a legal or beneficial interest in property and Peachtree Antiques is a separate juridical entity. *See Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158 (2001); *United States v. Goldin Indus., Inc.*, 219 F.3d 1268 (11th Cir. 2000) (en banc).

### *The Pattern of Racketeering*

72.    <u>Wire Fraud</u>. From approximately 2014 through and including 2024, Defendant did, in the Northern District of Georgia and elsewhere, devise and execute the scheme and artifice described herein to defraud Plaintiff and to obtain Plaintiff's money and property by means of false and fraudulent pretenses regarding the authenticity of artwork sought and purchased by Plaintiff. In furtherance of the scheme, Defendant Baitcher, acting through Peachtree Antiques, willfully and knowingly transmitted and caused to be transmitted numerous interstate or foreign electronic

communications – including emails, electronic invoices, and bank wire instructions – for the purpose of executing such scheme and artifice, each of which constituted a separate act of wire fraud in violation of 18 U.S.C. § 1343.

73.    Examples of predicate acts of wire fraud include, without limitation:

a. On or about August 22, 2014, Defendant Baitcher, using the email account appraiserallan@aol.com, sent an email to amalnik@aol.com, which email address belonged Plaintiff's managing member located in Ocean Ridge, Florida, falsely and fraudulently offering to purchase for Plaintiff "12 works by Liu Zhi. . . exhibited in 2013," when Defendant Baitcher then knew he had no intent to purchase said artwork for Plaintiff, but that he intended instead to purchase and deliver counterfeit reproductions.

b. On or about November 2, 2015, Defendant Baitcher, using the email account appraiserallan@aol.com, sent an email to amalnik@aol.com, which email address belonged to Plaintiff's managing member located in Ocean Ridge, Florida, falsely and fraudulently offering to purchase for Plaintiff "10 Bas Relief plaques" by artist Salvador Dali that "are originals and are signed

with artists proofs. One of a series of four," when Defendant Baitcher then knew he had no intent to purchase said artwork for Plaintiff, but that he intended instead to purchase and deliver a counterfeit reproduction.

c. On or about November 2, 2015, Defendant Baitcher, using the email account appraiserallan@aol.com, sent an email to amalnik@aol.com, which email address belonged to Plaintiff's managing member located in Ocean Ridge, Florida, falsely and fraudulently offering to purchase for Plaintiff an 18 karat gold sculpture by artist Salvador Dali "[s]et with rubies, diamonds, and sapphires," when Defendant Baitcher then knew he had no intent to purchase said artwork for Plaintiff, but that he intended instead to purchase a counterfeit reproduction.

d. On or about December 19, 2016, Defendant Baitcher, using the email account appraiserallan@aol.com, sent an email to amalnik@aol.com, which email address belonged to Plaintiff's managing member located in Ocean Ridge, Florida, falsely and fraudulently offering to purchase for Plaintiff "two fantastic original sculptures you have not seen before," when Defendant Baitcher then knew he had no intent to purchase said artwork for

Plaintiff, but that he intended instead to purchase counterfeit reproductions.

e. On or about February 2, 2018, Defendant Baitcher, using the email account appraiserallan@aol.com, sent an email to amalnik@aol.com, which email address belonged to Plaintiff's managing member located in Ocean Ridge, Florida, falsely and fraudulently representing Defendant Baitcher's ability and intent to purchase for Plaintiff one of seven copies of "The Apocalypse," by artist Salvador Dali, which email included a false and fabricated message purportedly from "Bruce" stating "It is exactly the same as the one in the picture," when Defendant Baitcher then knew he did not intend to purchase said artwork for Plaintiff, but that he intended instead to purchase and deliver a counterfeit reproduction.

f. On or about December 7, 2019, Defendant Baitcher, using the email account appraiserallan@aol.com, sent an email to amalnik@aol.com, which email address belonged to Plaintiff's managing member located in Ocean Ridge, Florida, falsely and fraudulently providing to Plaintiff a fabricated "final confirmation" from the "Miro review committee," including a

fabricated email from "expert" Ester Ramos Pia, using the email address ester.ramos@fmirobcn.org, purporting to confirm the authenticity of three Joan Miro works of art, when Defendant Baitcher then knew the report and representations were false and fraudulent.

g.  On or about February 6, 2020, Defendant Baitcher, using the email account appraiserallan@aol.com, sent an email to amalnik@aol.com, which email address belonged to Plaintiff's managing member located in Ocean Ridge, Florida, falsely and fraudulently stating that "Professor Zhongli is currently active teaching in Chongqing, China at the Sichuan Art Institute. He will be happy to review the four works of art and give us something in writing saying they are his works," when as Defendant then knew, no one would authenticate the works of art Defendant Baitcher had provided to Plaintiff because those items were counterfeit.

h.  On or about February 18, 2021, Defendant Baitcher, using the email account appraiserallan@aol.com, sent an email to amalnik@aol.com, which email address belonged to Plaintiff's managing member located in Ocean Ridge, Florida, falsely and

fraudulently offering to purchase for Plaintiff a painting of a candle by artist Gerhard Richter that had been displayed in the National Art Museum of China in 2008, when Defendant Baitcher then knew he had no intent to purchase said artwork for Plaintiff.

i.    On or about February 22, 2021, Defendant Baitcher, using the email account appraiserallan@aol.com, sent an email to amalnik@aol.com, which email address belonged to Plaintiff's managing member located in Ocean Ridge, Florida, falsely and fraudulently stated Defendant was "[s]till working on [the] Provenance" of a painting of a candle by artist Gerhard Richter, when Defendant Baitcher then knew he did not intend to purchase the original piece of artwork for Plaintiff and had no intent to provide accurate information to Plaintiff about the provenance of any counterfeit replica he would purchase in its place.

j.    On or about May 12, 2021, Defendant Baitcher, using the email account appraiserallan@aol.com, sent an email to amalnik@aol.com, which email address belonged to Plaintiff's managing member located in Ocean Ridge, Florida, falsely and

fraudulently offering to purchase for Plaintiff "Two Ovals," a painting by artist Wassily Kandinsky, "a very significant Russian artist," when Defendant Baitcher then knew he had no intent to purchase said artwork for Plaintiff, but that he intended instead to purchase a counterfeit reproduction.

k. On or about June 30, 2021, Defendant Baitcher, using the email account appraiserallan@aol.com, sent an email to amalnik@aol.com, which email address belonged to Plaintiff's managing member located in Ocean Ridge, Florida, falsely and fraudulently providing Plaintiff a letter from the Director of the Kowloon Heritage Museum purporting to authenticate 62 Wu Guanzhong works of art and confirm transfer of ownership to Plaintiff, when as Defendant Baitcher then knew, the letter was fabricated, false and fraudulent, and Defendant Baitcher had procured no such original artwork for Plaintiff.

l. On or about September 25 2021, Defendant Baitcher, using the email account appraiserallan@aol.com, sent an email to amalnik@aol.com, which email address belonged to Plaintiff's managing member located in Ocean Ridge, Florida, attaching what Defendant Baitcher then knew was a false and fraudulent

report from the HKMOA purporting to authenticate works of art by artist Nicole Eisenmann (sic), when Defendant Baitcher then knew the supposed Eisenman works of art he had purchased and delivered to Plaintiff were counterfeit reproductions.

m. On or about April 13, 2022, Defendant Baitcher, using the email account appraiserallan@aol.com, sent an email to amalnik@aol.com, which email address belonged to Plaintiff's managing member located in Ocean Ridge, Florida, falsely and fraudulently providing to Plaintiff a certificate of authenticity for "Two Ovals," a painting by artist Wassily Kandinsky, which certification Defendant Baitcher then knew was false and fraudulent.

n. On or about March 16, 2023, Defendant Baitcher, using the email account appraiserallan@aol.com, sent an email to amalnik@aol.com, belonging to Plaintiff's managing member located in Ocean Ridge, Florida, falsely and fraudulently representing that a fictitious expert named Peter Durham, whom Baitcher purported was a "well recognized expert in Koons sculpture[s]," would examine a sculpture by the artist Koons. Defendant Baitcher provided the domain name

46

"DurhamArtBroker.com" to substantiate the fictitious expert's credentials; however, as Defendant Baitcher then knew, this domain name was created just one day prior to Baitcher's email.

o. On or about March 20, 2023, Defendant Baitcher, using the email account appraiserallan@aol.com, sent an email to amalnik@aol.com, belonging to Plaintiff's managing member located in Ocean Ridge, Florida, falsely and fraudulently representing that a fictitious expert named Robert Sachs had "spent many hours doing a physical and chemical analysis of one of our Jackson Pollack [sic] works of art" on February 14, 2023, and provided Plaintiff with a falsified authentication report from the fictitious expert, which concluded that the work of art was "unquestionably by the artist Jackson Pollock," which Defendant Baitcher then knew was false.

p. On or about March 20, 2023, Defendant Baitcher, using the account appraiserallan@aol.com, sent an email to amalnik@aol.com, belonging to Plaintiff's managing member located in Ocean Ridge, Florida, falsely and fraudulently representing that a fictitious expert named Steven Rosen, whom Baitcher claimed was a "recognized expert on the artwork of Jean

47

Michelle Basquiat," examined and authenticated a Basquiat painting on March 16, 2023, and concluded that "the Basquiat painting I examined while at your location is indeed an original work of art by the artist Jean Michael Basquiat. There is no question whatsoever," which Defendant Baitcher then knew was false.

q.  On or about September 8, 2023, Defendant Baitcher, using the email account appraiserallan@aol.com, sent an email to amalnik@aol.com, belonging to Plaintiff's managing member located in Ocean Ridge, Florida, falsely and fraudulently representing a fictitious individual named Wuhan Cheung (a purported director at the HKMOA) assured Baitcher that certain pieces of art were authentic and came directly from the HKMOA. Baitcher inserted a purported exchange between himself and Cheung, which Baitcher then knew was false, fraudulent, and fictitious, into the email he sent to Plaintiff.

r.  On or about October 17, 2023, Defendant Baitcher, using the email account appraiserallan@aol.com, sent an email to amalnik@aol.com, belonging to Plaintiff's managing member located in Ocean Ridge, Florida, falsely and fraudulently

representing that Alexander Nachkebyia, Chairman and Curator of IQ Art Management Corporation, would authenticate multiple works of art by artist Banksy, and that those original works of art would be transferred from HKMOA to Plaintiff, which Defendant Baitcher then knew was false.

s. Upon knowledge and belief, none of the entities providing support and service for @aol.com email accounts on the dates listed above maintained servers in the State of Florida on those dates. Thus, the listed wire communications were routed through a server located outside the State of Florida and moved in interstate or foreign commerce to reach Plaintiff and its representatives in Ocean Ridge, Florida.

74. <u>Promotional Money Laundering</u>. From approximately 2014 through 2024, Defendant did, in the Northern District of Georgia and elsewhere, knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity, conduct or attempt to conduct through Peachtree Antiques such a financial transaction which in fact involved the proceeds of specified unlawful activity, to wit: wire fraud, with the intent to promote the carrying on of specified unlawful activity,

to wit: trafficking in counterfeit goods in violation of 18 U.S.C. § 2320, all in violation of 18 U.S.C. § 1956(a)(1)(A)(i).

75. <u>International Promotional Money Laundering</u>. From approximately 2014through 2024, Defendant Baitcher did, in the Northern District of Georgia and elsewhere, transport, transmit, or transfer, or attempt to transport, transmit, or transfer, through Peachtree Antiques, monetary instruments or funds from a place in the United States to or through a place outside the United States, or to a place in the United States from or through a place outside the United States, with the intent to promote the carrying on of specified unlawful activity to wit: trafficking in counterfeit goods in violation of 18 U.S.C. § 2320, all in violation of 18 U.S.C. § 1956(a)(2)(A).

76. <u>Money Laundering (Spending Statute)</u>. From approximately 2014 through 2024, Defendant Baitcher did, in the Northern District of Georgia and elsewhere, knowingly engage and attempt to engage in monetary transactions in criminally derived property of a value greater than $10,000, which property was derived from specified unlawful activity, to wit: wire fraud in violation of 18 U.S.C. § 1343.

77. Examples of predicate acts of money laundering as alleged in paragraphs 76-77 include, without limitation:

a. On or about the following dates, Defendant Baitcher did,
knowing that the property involved in the financial
transactions represented the proceeds of some form of
unlawful activity, conduct or attempt to conduct the following
financial transactions through Peachtree Antiques, which
financial transactions in fact involved the proceeds of
specified unlawful activity, to wit: wire fraud, with the intent
to promote the carrying on of specified unlawful activity, to
wit: trafficking in counterfeit goods in violation of 18 U.S.C.
§ 2320, all in violation of 18 U.S.C. § 1956(a)(1)(A)(i) and
18 U.S.C. § 1956(a)(2)(A):

| DATE | TO | FROM | AMOUNT |
|---|---|---|---|
| 4/27/2020 | Sha Liang, Canada | United States | $20,000 USD |
| 4/28/2020 | Wan Yan, China | United States | $50,000 USD |
| 5/20/2020 | Wan Yan China | United States | $75,000 USD |
| 6/2/2020 | Sha Liang, China | United States | $19,725 USD |
| 6/5/2020 | Sha Liang, China | United States | $18,000 USD |
| 6/22/2020 | Chen Qiyao, China | United States | $6,000 USD |
| 6/22/2020 | Sha Liang, China | United States | $16,000 USD |

| 6/22/2020 | Wan Yan, China | United States | $75,000 USD |
| 7/14/2020 | Sha Liang, China | United States | $12,000 USD |
| 7/16/2020 | Liang Danyun, China | United States | $11,450 USD |
| 7/22/2020 | Chen Qiyao, China | United States | $4,100 USD |
| 8/10/2020 | Sha Liang, China | United States | $19,800 USD |
| 8/19/2020 | Wiang Yang, China | United States | $85,000 USD |
| 9/2/2020 | Chen Qiyao, China | United States | $2,240 USD |
| 9/3/2020 | Sha Liang, China | United States | $20,000 USD |
| 9/17/2020 | Wang Yan, China | United States | $85,000 USD |
| 9/28/2020 | Sha Liang, China | United States | $19,000 USD |
| 9/28/2020 | Wang Yan, China | United States | $80,000 USD |
| 10/6/2020 | Sha Liang, China | United States | $19,500 USD |
| 10/22/2020 | Sha Liang, China | United States | $11,500 USD |
| 11/12/2020 | Sha Liang, China | United States | $24,600 USD |
| 11/30/2020 | Chen Qiyao, China | United States | $7,810 USD |
| 11/30/2020 | Sha Liang, China | United States | $25,000 USD |
| 12/18/2020 | Sha Liang, Canada | United States | $28,000 USD |
| 12/22/2020 | Wang Yan, China | United States | $90,000 USD |
| 12/29/2020 | Sha Liang, Canada | United States | $27,000 USD |

b. To the extent the transactions in subparagraph 58a exceed $10,000, they are also predicate acts in violation of 18 U.S.C. § 1957.

78. <u>Trafficking in Counterfeit Goods</u>. From approximately 2014 through 2024, Defendant Baitcher did, in the Northern District of Georgia and elsewhere, intentionally traffic in goods or services through Peachtree Antiques, and knowingly use a counterfeit mark on or in connection with such goods or services, in violation of 18 U.S.C. 2320(a)(1).

79. On or about the following dates, Defendant Baitcher did, as alleged in paragraph 80, intentionally traffic in goods or services through Peachtree Antiques, and knowingly use a counterfeit mark on or in connection with such goods or services, in violation of 18 U.S.C. 2320(a)(1):

| DATE | CONSIGNEE | SHIPPER | PRODUCT DESCRIPTION |
| --- | --- | --- | --- |
| 10/20/2017 | Peachtree Antiques | YouFine Sculpture Limited | Bronze Sculpture |
| 2/8/2018 | Peachtree Antiques | YouFine Sculpture Limited | Bronze Sculpture |
| 6/11/2018 | Peachtree Antiques | YouFine Art Sculpture Limited | Bronze Sculpture and Marble Carving |

| 9/7/2018 | Peachtree Antiques | YouFine Art Sculpture Limited | Bronze Sculpture |
|---|---|---|---|
| 11/25/2018 | Peachtree Antiques | YouFine Art Sculpture Limited | Bronze Sculpture Marble Carving |
| 2/6/2019 | Peachtree Antiques | YouFine Art Sculpture Limited | Bronze Sculpture Marble Carving |
| 2/27/2019 | Peachtree Antiques | YouFine Art Sculpture Limited | Bronze Sculpture 83062990 60829110 |
| 5/24/2019 | Peachtree Antiques | YouFine Art Sculpture Limited | Bronze Sculpture 83062990 Marble Carving 608229110 Fiberglass Sculpture 39264000 |
| 6/19/2019 | Peachtree Antiques | YouFine Art Sculpture Limited | Bronze Sculpture 830662990 |
| 7/31/2019 | Peachtree Antiques | YouFine Art Sculpture Limited | Bronze Sculpture Marble Carving Fiberglass Sc. |
| 9/19/2019 | Peachtree Antiques | YouFine Art Sculpture Limited | Bronze Sculpture 830662990 Marble Carving 608229110 |
| 12/18/2019 | Peachtree Antiques | YouFine Art Sculpture Limited | Bronze Sculpture Marble Carving Stainless St. |

| | | | |
|---|---|---|---|
| 2/13/2020 | Peachtree Antiques | YouFine Sculpture Limited | Bronze Sculpture 830662990 Marble Carving 608229110 Teel Sculpture 83062990 |
| 2/18/2020 | Peachtree Antiques | YouFine Art Sculpture Limited | Bronze Sculpture Marble Carving |
| 6/24/2020 | Peachtree Antiques | YouFine Art Sculpture Limited | Bronze Sculpture Marble Carving Aluminum Scul. |
| 9/3/2020 | Peachtree Antiques | YouFine Art Sculpture Limited | Bronze Sculpture Marble Carving Aluminum Sculpture Stainless Steel Sculpture Fiberglass . . . |
| 10/24/2020 | Peachtree Antiques | YouFine Art Sculpture Limited | Bronze Sculpture Marble Carving Stainless Steel Sculpture Fiberglass Sculpture |
| 11/11/2020 | Peachtree Antiques | YouFine Art Sculpture Limited | Bronze Sculpture Fiberglass Sculpture Wooden Carving Decorative Painting |
| 1/27/2021 | Peachtree Antiques | YouFine Art Sculpture Limited | Bronze Sculpture Marble Carving Fiberglass Sculpture |
| 6/19/2021 | Peachtree Antiques | YouFine Art | Bronze Sculpture Marble Carving |

| | | Sculpture Limited | Fiberglass Sculpture Stainless Steel Sculpture |
|---|---|---|---|
| 10/4/2021 | Peachtree Antiques | YouFine Art Sculpture Limited | Plaster Sculpture Bronze Sculpture Stainless Steel Sculpture Marble Carving |
| 3/6/2022 | Peachtree Antiques | YouFine Art Sculpture Limited | Bronze Sculpture Marble Carving Fiberglass Sculpture |
| 4/30/2022 | Peachtree Antiques | YouFine Art Sculpture Limited | Bronze Sculpture Marble Carving Bronze Sculpture (83062990) Marble Carving (6829110) |
| 5/24/2022 | Peachtree Antiques | YouFine Art Sculpture Limited | Plaster Sculpture 68099000 Plaster Sculpture 83062990 Bronze Sculpture 83062990 . . . . |
| 7/19/2022 | Peachtree Antiques | YouFine Art Sculpture Limited | Plaster Sculpture Bronze Sculpture Stainless |
| 9/21/2022 | Peachtree Antiques | YouFine Art Sculpture Limited | Bronze Sculpture Stainless Steel Sculpture Fiberglass Sculpture Marble Carving |
| 12/28/2022 | Peachtree Antiques | YouFine Art Sculpture Limited | Bronze Sculpture |

| 2/28/2023 | Peachtree Antiques | YouFine Art Sculpture Limited | Bronze Sculpture Marble Carving Wooden Carving Decorative Painting Stainless Steel . . . . |
|---|---|---|---|

### *Pattern and Continuity*

80.    The predicate acts described above are related to and amount to a pattern of racketeering activity extending over more than nine years and involving repeated transactions with similar purposes and results, the same victim, and the same method of commission.

81.    Defendant, through his operation and management of the enterprise and through his pattern of racketeering activity, repeatedly deceived and defrauded Plaintiff by charging it for unique, authentic works of art and with the intent to deliver instead inauthentic and counterfeit artwork. Between 2014 and 2024, Defendant conducted approximately 85 separate fraudulent transactions with Plaintiff, resulting in Defendant's willful, purposeful, and knowing delivery to Plaintiff of several thousand pieces of inauthentic and/or counterfeit artwork.

82.    Defendant, through his operation and management of the enterprise and through his pattern of racketeering activity, also repeatedly deceived and defrauded Plaintiff by charging it for unique, authentic works of

art with the intent to deliver nothing at all. Between 2014 and 2024, Defendant conducted approximately 85 separate fraudulent transactions with Plaintiff, resulting in Defendant's willful, purposeful, and knowing retention of Plaintiff's funds for the delivery of counterfeit or replica artwork or nothing at all in return. At the time of this filing, Plaintiff awaits delivery of approximately 849 pieces of authentic artwork for which it has previously paid Defendant. Upon repeated demand by Plaintiff for delivery, Defendant has responded with nothing but excuses and platitudes.

83.    The scheme was integral to Defendant's use of Peachtree Antiques as a continuing vehicle for fraud and thus demonstrates both closed-ended and open-ended continuity. Defendant's operation and management of the enterprise resulted in considerable profit to Defendant from the pattern of racketeering activity described above and Defendant will continue to profit financially from his pattern of criminal activity.

### *Distinctness and Operation/Management*

84.    Defendant exercised control over Peachtree Antiques by leading and directing the enterprise's affairs, making decisions on behalf of the enterprise, authorizing fraudulent transactions, and using corporate accounts to receive, launder, and conceal proceeds.

85. By these acts, Defendant participated in the operation and management of the enterprise, as required by *Reves v. Ernst & Young*, 507 U.S. 170 (1993).

86. Accordingly, Defendant—the "person"—is liable for conducting and participating in the affairs of Peachtree Antiques—the "enterprise"—through a pattern of racketeering activity.

### Causation and Damages

87. Plaintiff relied on and was deceived by the fraudulent wire communications knowingly and purposefully provided to it by Defendant and, as a direct and proximate result, provided payments totaling approximately $20,000,000.00 to Peachtree Antiques, the enterprise.

88. Plaintiff received from Defendant Baitcher thousands of counterfeit items of artwork fraudulently portrayed as, and as a direct and proximate result, was unlawfully deprived of the value of the genuine, authentic works of art, which Baitcher represented would have been valued substantially in excess of $200,000,000 if only they were authentic. Instead, the counterfeit artwork acquired by Plaintiff was worth a minuscule value or of no value at all, and certainly far less than what Plaintiff paid for it.

89. Defendant Baitcher perpetuated his scheme to defraud Plaintiff and was able to execute it hundreds of times by laundering Plaintiff's

payments, which were obtained by acts of wire fraud, through the enterprise and unlawfully transferring those proceeds to businesses inside and outside the United States to purchase counterfeit or replica works of art and pay shipping fees and other associated costs through other agents.

90.    Plaintiff thereby sustained injury to its business and property, including the loss of funds transferred to the Defendant, lost business opportunities, loss of use of property, loss of reputation and goodwill, and other consequential damages. These damages were foreseeable results of Defendant's acts of racketeering at the time the acts occurred.

91.    Plaintiff's injuries described herein were a direct, proximate, and reasonably foreseeable result of Defendant's violations of 18 U.S.C. § 1962(c) and the predicate acts of criminal activity enumerated above.

92.    In accordance with 18 U.S.C. § 1964(c), Plaintiff is entitled to bring this action and to recover herein threefold the actual damages sustained, plus costs and reasonable attorneys' fees.

93.    **WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment in its favor on this Count and award:

      a.  Damages in the amount of three times the actual damages sustained by the Plaintiff;

      b.  Compensatory and consequential damages;

c.  Reasonable attorneys' fees and costs; and

d.  Such other and further relief, in law or in equity, as this Court

   deems just and proper under the circumstances.

## COUNT TWO – VIOLATION OF GA. CODE ANN. §§ 16-14-1 to 16-14-15
## (Violation of Georgia Racketeer Influenced and Corrupt Organizations (RICO) Act)
## (AGAINST DEFENDANT ALLAN BAITCHER)

94.    Plaintiff realleges and incorporates by reference the allegations set forth in Paragraphs 1–65 and 66–94 of this Complaint as if fully restated herein.

95.    Plaintiff alleges this claim against Defendant Allan Baitcher.

96.    This Count arises under the Georgia Racketeer Influenced and Corrupt Organizations Act ("Georgia RICO Act"), O.C.G.A. § 16-14-1 *et seq*.

97.    Pursuant to O.C.G.A. § 16-14-1(b), "[i]t shall be unlawful for any person employed by or associated with any enterprise to conduct or participate in, directly or indirectly, such enterprise through a pattern of racketeering activity."

98.    At all relevant times, Defendant was a "person" within the meaning of O.C.G.A. § 16-14-4, capable of holding legal or beneficial interest in property.

99.    Peachtree Antiques, a Georgia corporation controlled by Defendant, constituted an "enterprise" within the meaning of O.C.G.A. § 16-14-3(3).

100.    The enterprise existed separately and apart from the racketeering activity alleged herein and was engaged in, and its activities affected, trade and commerce in Georgia, as well as interstate and foreign commerce.

101.    Defendant conducted or participated in, directly or indirectly, the affairs of the enterprise through a pattern of racketeering activity as defined in O.C.G.A. § 16-14-3(4)(A).

102.    The pattern consisted of at least two or more interrelated predicate acts of "racketeering activity," including but not limited to:

    a.  Wire fraud in violation of 18 U.S.C. § 1343, incorporated by O.C.G.A. § 16-14-3(5)(C);

    b.  Promotional Money Laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(i), incorporated by O.C.G.A. § 16-14-3(5)(C);

    c.  International Promotional Money Laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(i), incorporated by O.C.G.A. § 16-14-3(5)(C);

    d.  Trafficking in Counterfeit Goods in violation of 18 U.S.C. § 2320(a)(1), incorporated by O.C.G.A. § 16-14-3(5)(C);

    e.  Theft by deception in violation of O.C.G.A. § 16-8-3; and

    f.  False statements and writings in violation of O.C.G.A. § 16-10-20.

103.   These predicate acts were related to each other and to the enterprise, shared a common purpose of defrauding Plaintiff for Defendant's personal and financial gain, and occurred within a span of less than ten years.

104.   By engaging in the foregoing conduct, Defendant violated O.C.G.A. § 16-14-4(a) by, through a pattern of racketeering activity, acquiring or maintaining, directly or indirectly, control of money or property belonging to Plaintiff.

105.   By engaging in the foregoing conduct, Defendant violated O.C.G.A. § 16-14-4(b) by, through a pattern of racketeering activity, conducting or participating in, directly or indirectly, an enterprise by which he was employed and with which he was associated, through a pattern of racketeering activity.

106.   As a direct and proximate result of Defendant's violations of the Georgia RICO Act, Plaintiff has sustained injury to its business and property, including the loss of funds transferred to the defendant, lost business opportunities, loss of use of property, loss of reputation and goodwill, and other consequential damages. These damages were foreseeable results of Defendant's acts of racketeering at the time the acts occurred.

107.    Pursuant to O.C.G.A. § 16-14-6(c), Plaintiff is entitled to recover threefold actual damages sustained, costs of suit, and reasonable attorneys' fees.

108.    Defendant actions amount to willful misconduct and Defendant acted with malice and fraudulent intent, thus entitling Plaintiff to punitive damages pursuant to O.C.G.A. § 16-14-6(c).

109.    Plaintiff also seeks all other relief authorized by O.C.G.A. § 16-14-6(a)-(d), including equitable relief and the imposition of constructive trusts upon the proceeds of the racketeering activity.

110.    **WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment in its favor on this Count and award:

a.  Damages in the amount of three times the actual damages sustained by the Plaintiff pursuant to O.C.G.A. § 16-14-6(c);

b.  Compensatory and consequential damages;

c.  Reasonable attorneys' fees and costs pursuant to O.C.G.A. § 16-14-6(c);

d.  Punitive damages pursuant to O.C.G.A. § 16-14-6(c); and

e.  Such other and further relief, in law or in equity, as this Court deems just and proper under the circumstances.

## COUNT THREE – BREACH OF FIDUCIARY DUTY
### (Georgia Common Law)
### (AGAINST DEFENDANTS ALLAN BAITCHER AND PEACHTREE ANTIQUES)

111.    Plaintiff realleges and incorporates by reference the allegations set forth in Paragraphs 1–65 of this Complaint as if fully restated herein.

112.    Plaintiff asserts this claim against Defendants Allan Baitcher and Peachtree Antiques, jointly and severally, because the wrongful acts alleged herein were committed by Defendant Baitcher while acting within the course and scope of his authority for, and on behalf of, Defendant Peachtree Antiques, and/or were authorized, ratified, and benefited Peachtree Antiques.

113.    At all relevant times, Defendants occupied a position of trust and confidence with respect to Plaintiff.

114.    At all relevant times, Defendants received and held Plaintiff's funds for the purchase of original, authentic, pieces of art.

115.    Defendants assumed duties of honesty, good faith, fair dealing, full disclosure, and loyalty toward Plaintiff through Defendant Baitcher's representations, contractual undertakings, and course of dealing.

116.    Defendants owed Plaintiff a fiduciary duty arising from:

   a.    Defendant Baitcher's superior knowledge and control over Plaintiff's business funds and decisions;

b. Defendant Baitcher's voluntary assumption of a position of trust in advising and directing Plaintiff's transactions;

c. Defendant Baitcher's agreement to act for or on behalf of Plaintiff in matters of financial and contractual significance; and

d. Defendant Peachtree Antiques' and Defendant Baitcher's receipt and retention of Plaintiffs funds for the purpose of conducting legitimate business transactions in the form of purchasing original, authentic artwork for Plaintiff.

117.   In reliance upon this relationship of trust, Plaintiff placed control of significant financial assets in Defendants' hands.

118.   Defendants breached their fiduciary duties to Plaintiff by, *inter alia*:

a. Misrepresenting the nature and purpose of financial transactions to induce transfers of funds for Defendants' own benefit;

b. Failing to disclose material facts regarding Defendant Baitcher's personal interest in, and control over, the accounts and entities receiving the funds;

    c.  Misappropriating and diverting Plaintiff's corporate assets for unauthorized personal use; and

    d.  Engaging in conduct directly adverse to Plaintiff's interests while purporting to act as Plaintiff's trusted advisor and business agent.

119.  Defendant Baitcher and Defendant Peachtree Antiques, acting through Baitcher in his capacity as the corporation's owner and controlling agent, engaged in the foregoing conduct willfully, intentionally, maliciously, and in bad faith, with a conscious disregard of Plaintiff's rights and interests, conscious indifference to the consequences, and with a specific intent to deceive, injure, and cause harm to Plaintiff.

120.  As a direct and proximate result of Defendants' breach of fiduciary duty, Plaintiff has sustained substantial injury and damages, including loss of funds transferred to Defendants, lost business opportunities, and other consequential damages.

121.  Defendants' actions were committed with moral turpitude and aggravating circumstances, entitling Plaintiff to an award of punitive damages under O.C.G.A. § 51-12-5.1.

122.    **WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment in its favor on this Count and award, jointly and severally against Defendants Allan Baitcher and Peachtree Antiques:

    a.  Compensatory damages in an amount to be determined at trial;

    b.  Punitive damages pursuant to O.C.G.A. § 51-12-5.1;

    c.  Attorney's fees and litigation expenses under O.C.G.A. § 13-6-11;

    d.  Pre- and post-judgment interest; and

    e.  Such other and further relief as the Court deems just and proper.

## COUNT FOUR – FRAUD
## (Georgia Common Law)
## (AGAINST DEFENDANTS ALLAN BAITCHER AND PEACHTREE
## ANTIQUES)

123.   Plaintiff realleges and incorporates by reference the allegations set forth in Paragraphs 1–65 of this Complaint as if fully restated herein.

124.   Plaintiff asserts this claim against Defendants Allan Baitcher and Peachtree Antiques, jointly and severally, because the wrongful acts alleged herein were committed by Defendant Baitcher while acting within the course and scope of his authority for, and on behalf of, Defendant Peachtree Antiques, and/or were authorized, ratified, and benefited Peachtree Antiques.

125.   Defendant Baitcher, individually and in his capacity as an officer and controlling owner of Defendant Peachtree Antiques, knowingly made false and material representations to Plaintiff regarding the identity, value, provenance, and authenticity of works of art purchased by Plaintiff.

126.   Defendant Baitcher knew those representations were false when made or made them with reckless disregard to their truth or falsity.

127.   Defendant Baitcher intended that Plaintiff rely upon these false statements, and Plaintiff reasonably relied on them to its detriment. Plaintiff reasonably relied on Defendant Baitcher in light of the decades' long

relationship between its managing member and Baitcher and Baitcher's expertise.

128.    Plaintiff suffered actual damages as a direct and proximate result of Defendant Baitcher's misrepresentations, including monetary losses and related harm to its business operations.

129.    Defendant Baitcher and Defendant Peachtree Antiques, acting through Baitcher in his capacity as the corporation's owner and controlling agent, engaged in the foregoing conduct willfully, intentionally, maliciously, and in bad faith, with a conscious disregard of Plaintiff's rights and interests, conscious indifference to the consequences, and with a specific intent to deceive, injure, and cause harm to Plaintiff.

130.    Under O.C.G.A. § 51-12-5.1, punitive damages are warranted to punish Defendants for such aggravated misconduct and to deter similar conduct in the future. *Colonial Pipeline Co. v. Brown*, 258 Ga. 115, 118 (1988).

131.    **WHEREFORE**, Plaintiff respectfully requests this Court enter judgment in its favor and award, jointly and severally against Defendants Allan Baitcher and Peachtree Antiques:

> a.  Compensatory damages in an amount to be determined at trial;

b.  Punitive damages pursuant to O.C.G.A. § 51-12-5.1;

c.  Attorney's fees and litigation expenses under O.C.G.A. § 13-6-11;

d.  Pre- and post-judgment interest; and

e.  Such other and further relief as the Court deems just and proper.

## COUNT FIVE – THEFT BY DECEPTION
## (O.C.G.A. § 16-8-3; O.C.G.A. §§ 51-1-6, 51-10-6)
## (AGAINST DEFENDANTS ALLAN BAITCHER AND PEACHTREE ANTIQUES)

132.    Plaintiff realleges and incorporates by reference the allegations set forth in Paragraphs 1–65 of this Complaint as if fully restated herein.

133.    Plaintiff asserts this claim against Defendants Allan Baitcher and Peachtree Antiques, jointly and severally, because the wrongful acts alleged herein were committed by Defendant Baitcher while acting within the course and scope of his authority for, and on behalf of, Defendant Peachtree Antiques, and/or were authorized, ratified, and benefited Peachtree Antiques.

134.    Under O.C.G.A. § 16-8-3(a), a person commits theft by deception when he "obtains property by any deceitful means or artful practice with the intention of depriving the owner of the property."

135.    Defendant Baitcher, individually and in his capacity as an officer and controlling owner of Defendant Peachtree Antiques, obtained money and property belonging to Plaintiff by knowingly making false representations of material fact and deceptive promises regarding the nature and purpose of requested wire transfers.

136.    Specifically, Defendant Baitcher falsely represented to Plaintiff that funds transferred to Peachtree Antiques would be used to secure original,

authentic pieces of art, despite knowing that Defendants Baitcher and Peachtree Antiques intended to deliver cheap, inauthentic, counterfeit replicas of art and that most of the funds transferred to Peachtree Antiques by Plaintiff would be diverted for Defendant Baitcher's personal use.

137. Defendant Baitcher's misrepresentations and omissions were made with intent to deceive and to obtain Plaintiff's property, and Plaintiff relied upon those false statements in transferring substantial sums of money from its Florida bank accounts to Defendant Peachtree Antiques' Georgia accounts.

138. By means of this deceitful conduct, Defendants knowingly obtained Plaintiff's money and property with the intent to permanently deprive Plaintiff thereof, in violation of the statutory duty imposed by O.C.G.A. § 16-8-3.

139. Pursuant to O.C.G.A. § 51-1-6, a person injured by another's violation of a statutory duty may recover in tort for the resulting damages.

140. Plaintiff therefore brings this civil claim for damages predicated upon Defendants' criminally proscribed acts of theft by deception.

141. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered monetary loss, loss of business opportunities, and consequential damages in an amount to be proven at trial.

142.   Defendant Baitcher and Defendant Peachtree Antiques, acting through Baitcher in his capacity as the corporation's owner and controlling agent, engaged in the foregoing conduct willfully, intentionally, maliciously, and in bad faith, with a conscious disregard of Plaintiff's rights and interests, conscious indifference to the consequences, and with a specific intent to deceive, injure, and cause harm to Plaintiff.

143.   Under O.C.G.A. § 51-12-5.1, punitive damages are warranted to punish Defendants for such aggravated misconduct and to deter similar conduct in the future. *Colonial Pipeline Co. v. Brown*, 258 Ga. 115, 118 (1988).

144.   **WHEREFORE**, Plaintiff respectfully requests this Court enter judgment in its favor and award, jointly and severally against Defendants Allan Baitcher and Peachtree Antiques:

a.  Restitution for all money or property obtained by Defendants through deception;

b. Compensatory damages equal to the value of the property wrongfully taken;

b.  Punitive damages under O.C.G.A. § 51-12-5.1;

c.  Attorney's fees and litigation expenses under O.C.G.A. § 13-6-11;

d.  Pre- and post-judgment interest; and

e.  Such other and further relief as the Court deems just and proper.

## COUNT SIX – UNJUST ENRICHMENT/MONEY HAD AND RECEIVED
### (Equitable Relief Under Georgia Common Law)
### (AGAINST DEFENDANTS ALLAN BAITCHER AND PEACHTREE ANTIQUES)

145.   Plaintiff realleges and incorporates by reference the allegations set forth in Paragraphs 1–65 of this Complaint as if fully restated herein.

146.   Plaintiff asserts this claim against Defendants Allan Baitcher and Peachtree Antiques, jointly and severally, because the wrongful acts alleged herein were committed by Defendant Baitcher while acting within the course and scope of his authority for, and on behalf of, Defendant Peachtree Antiques, and/or were authorized, ratified, and benefited Peachtree Antiques.

147.   Defendants have been unjustly enriched by receiving and retaining funds belonging to Plaintiff, which were obtained through deception and misrepresentation.

148.   The retention of these funds by Defendants would be unjust and inequitable, as the money was acquired through false pretenses and without lawful consideration.

149.   Plaintiff conferred a benefit upon Defendants in the form of monetary transfers, which Defendants accepted and retained under circumstances that make it inequitable for Defendants to keep those funds.

150.   Equity requires that Defendants be deemed a constructive trustee of all such property for Plaintiff's benefit.

151.   Plaintiff is entitled to recover the amounts wrongfully obtained and retained by Defendants, under the doctrines of unjust enrichment and money had and received, to prevent Defendants' unjust gain at Plaintiff's expense.

152.   **WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment in its favor and award, jointly and severally against Defendants Allan Baitcher and Peachtree Antiques:

   a.   Restitution in the full amount of money or property unjustly retained by Defendants;

   b.   Imposition of a constructive trust upon all funds, accounts, and assets traceable to Plaintiff's property;

   c.   Equitable disgorgement of all profits realized from Defendants' wrongful retention; and

   d.   Such other and further relief as the Court deems just and proper.

## COUNT SEVEN – FRAUDULENT TRANSFER
## (O.C.G.A. § 18-2-70 et seq.)
## (AGAINST DEFENDANTS ALLAN BAITCHER AND PEACHTREE
## ANTIQUES)

157.    Plaintiff realleges and incorporates by reference the allegations set forth in Paragraphs 1–65 of this Complaint as if fully restated herein.

158.    Plaintiff asserts this claim against Defendants Allan Baitcher and Peachtree Antiques, jointly and severally, because the wrongful acts alleged herein were committed by Defendant Baitcher while acting within the course and scope of his authority for, and on behalf of, Defendant Peachtree Antiques, and/or were authorized, ratified, and benefited Peachtree Antiques.

159.    Upon information and belief, Defendant Baitcher, after receiving funds from Plaintiff, transferred or concealed portions of those funds to and through Defendant Peachtree Antiques and other accounts under his control, with the intent to hinder or delay the collection of the indebtedness, and defraud Plaintiff as a creditor.

160.    Defendant Baitcher did so individually and in his capacity as an officer and controlling owner of Defendant Peachtree Antiques.

161.    Such transfers were made without receiving reasonably equivalent value in exchange, and Defendant Baitcher knew or reasonably

should have known that he was thereby incurring debts beyond his ability to pay as they became due.

162.    These acts constitute fraudulent transfers within the meaning of O.C.G.A. § 18-2-74(a)(1)–(2) and § 18-2-75(a).

163.    Plaintiff, as a defrauded creditor, is entitled to avoid the transfers, attach or garnish assets, and seek injunctive relief under O.C.G.A. § 18-2-77(a), as well as recovery of judgment and costs under § 18-2-78.

164.    **WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment in its favor and award, jointly and severally against Defendants Allan Baitcher and Peachtree Antiques:

a.  Avoidance and setting aside of all fraudulent transfers made by Defendants with intent to hinder, delay, or defraud Plaintiff;

b.  Attachment, garnishment, or injunction to preserve assets subject to judgment;

c.  Appointment of a receiver to marshal and recover transferred property;

d.  Judgment for the value of property fraudulently transferred; and

e.  Such other relief as the Court deems just and proper.

## COUNT EIGHT –ACCOUNTING/EQUITABLE RELIEF
## (AGAINST DEFENDANTS ALLAN BAITCHER AND PEACHTREE ANTIQUES)

165.    Plaintiff realleges and incorporates by reference the allegations set forth in Paragraphs 1–65 of this Complaint as if fully restated herein.

166.    Plaintiff asserts this claim against Defendants Allan Baitcher and Peachtree Antiques, jointly and severally, because the wrongful acts alleged herein were committed by Defendant Baitcher while acting within the course and scope of his authority for, and on behalf of, Defendant Peachtree Antiques, and/or were authorized, ratified, and benefited Peachtree Antiques.

167.    Defendant Peachtree Antiques holds proceeds traceable to Defendant Baitcher's wrongful acquisition of Plaintiff's property.

168.    Defendants' wrongful acquisition and retention of Plaintiff's property created a constructive trust by operation of law upon all proceeds, accounts, or property traceable to the funds misappropriated from Plaintiff.

169.    Because Defendants have exclusive knowledge and control of the accounts and transfers in question, an accounting is necessary to determine the full extent of Plaintiff's losses and the disposition of its property.

170.    Plaintiff seeks equitable relief in the form of an accounting of all funds received and transferred by Defendant Baitcher, Defendant Peachtree Antiques, or Defendants' other entities, and such further injunctive or

equitable relief as the Court deems proper to prevent ongoing dissipation of assets.

171.    **WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment in its favor and award, jointly and severally against Defendants Allan Baitcher and Peachtree Antiques:

    a.  An accounting of all funds received, transferred, or controlled by Defendants or their entities;

    b.  An injunction preventing further dissipation or concealment of assets; and

    c.  Such other equitable relief as the Court deems just and proper.

## COUNT NINE –ATTORNEYS' FEES
## (O.C.G.A. § 13-6-11)
## (AGAINST DEFENDANTS ALLAN BAITCHER AND PEACHTREE ANTIQUES)

182.     Plaintiff realleges and incorporates by reference paragraphs 1-181 of this Complaint as if fully restated herein.

183.     Plaintiff asserts this claim against Defendants Allan Baitcher and Peachtree Antiques, jointly and severally, because the wrongful acts alleged herein were committed by Defendant Baitcher while acting within the course and scope of his authority for, and on behalf of, Defendant Peachtree Antiques, and/or were authorized, ratified, and benefited Peachtree Antiques.

184.     Defendants' bad faith conduct and stubborn litigiousness have caused Plaintiff unnecessary trouble and expense, entitling Plaintiff to recover attorney's fees and litigation costs under O.C.G.A. § 13-6-11.

185.     **WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment against Defendant and award, jointly and severally against Defendants Allan Baitcher and Peachtree Antiques:

a.  Attorneys' fees and litigation expenses under O.C.G.A. § 13-6-11;

b.  Pre- and post-judgment interest as allowed by law; and

c.  Such other and further relief as the Court deems just and proper.

This 21st day of November 2025.

/s/ Kurt E. Lentz
Kurt E. Lentz
Georgia Bar No. 804355
klentz@bakerlaw.com
Brian F. McEvoy
Georgia Bar No. 490845
bmcevoy@bakerlaw.com
Jenna G. Solari
jsolari@bakerlaw.com
Georgia Bar No. 817888
Jarvarus A. Gresham
jgresham@bakerlaw.com
Georgia Bar No. 873933
BAKER & HOSTETLER LLP
1170 Peachtree Street, NE,
Suite 2400
Atlanta, Georgia 30309
Telephone: (404) 459-0050
Facsimile: (404) 459-5734